**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Constance F. CUNNINGHAM,
Defendant–Appellant.**

No. 96–1277.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 20, 1996.

Decided Dec. 26, 1996.

Mark D. Stuaan (argued), Office of the United States Attorney, Indianapolis, IN, for Plaintiff–Appellee.

Jeffery L. Lantz (argued), Evansville, IN, for Defendant–Appellant.

Before POSNER, Chief Judge, and CUDAHY and DIANE P. WOOD, Circuit Judges.

POSNER, Chief Judge.

Constance Cunningham was sentenced to 84 months in prison after being convicted by a jury of tampering with a consumer product "with reckless disregard for the risk that another person will be placed in danger of death or bodily injury and under circumstances manifesting extreme indifference to such risk." 18 U.S.C. § 1365(a). Cunningham was a registered nurse at an Indiana hospital. The hospital staff discovered that syringes containing the powerful painkiller Demerol (a brand name for meperidine hydrochloride, *Physician's Desk Reference* 2206 (49th ed.1995), a Schedule II controlled substance, 21 C.F.R. § 1308.12(c)(18) (1996)) had been tampered with; in some instances the Demerol had been replaced with a saline solution. Cunningham was one of five nurses who, during a period when some of the syringes were known to have been tampered with, had access to the locked cabinet in which they were kept. All five nurses were interviewed by the police and denied having tampered with the syringes. But Cunningham acknowledged having once been a Demerol addict. She said the problem was in the past and to prove this she offered to have her blood and urine tested for Demerol. The blood test was negative but the urine test positive, which was consistent with recent use, since Demerol remains in the urinary tract longer than in the bloodstream. The government believes that Cunningham was stealing Demerol from the syringes in order to feed a Demerol addiction.

█ Cunningham argues that merely withholding pain medication does not "place" anyone "in danger of ... bodily injury." The statute defines "bodily injury" to include "physical pain," 18 U.S.C. § 1365(g)(4)(B), but she argues that failing to relieve pain is not the same as causing pain. Since with the pain medication there is no (or less) pain, the withholding of the medication is a necessary condition of pain; but not all necessary conditions are causes. Having a nervous system is a necessary condition of experiencing pain, but we would not ordinarily say that having a nervous system causes pain. Causal ascription is purposive. In law it is based on social ideas about responsibility; it is policy-driven. In light of the goals reasonably to be imputed to a statute that punishes product tampering with injurious consequences expressly including pain, conduct that perpetuates an injury by preventing it from being alleviated by the product designed for that end is on the same footing as tampering that creates a fresh injury, as when the tamperer introduces a poison into a drug. In either case there is an injury that would not have occurred had the tampering not occurred. We

cannot think of any reason to distinguish between the two cases. There was also evidence that the saline solution that replaced the Demerol, not being sterile, created a risk of infection. This evidence was not essential and we do not rely on it, because the statute as we interpret it forbids tampering that reduces the efficacy of a drug designed to save life or alleviate a bodily injury, as well as tampering that turns the drug into a poison. We cannot find a case that so holds, but our interpretation was assumed in *United States v. Eide*, 875 F.2d 1429, 1432–33 (9th Cir.1989), and no cases are contrary.

We must next consider whether the district judge abused his discretion in admitting evidence of prior "bad acts" of the defendant. Fed.R.Evid. 404(b). Four years before the tampering, Cunningham had pleaded guilty to stealing Demerol from the hospital at which she was then employed as a nurse under another name. Her nurse's license had been suspended, but it had later been reinstated subject to several conditions including that she submit to periodic drug testing. She falsified the results of some of these tests. The judge sustained an objection to placing the conviction in evidence but allowed in the suspension of her license because of her earlier theft of Demerol, the falsification of the test results, and the addiction that had led to the earlier theft and resulting suspension.

■ Rule 404(b) forbids the introduction of evidence of a person's prior conduct (wrongful or otherwise, *United States v. Hill*, 40 F.3d 164, 168 (7th Cir.1994), but normally wrongful) for the purpose of showing a propensity to act in accordance with the character indicated by that conduct. So the fact that Cunningham had stolen Demerol in the past could not be introduced to show that she is likely to have stolen Demerol in the present. But evidence of prior conduct may be introduced (subject to the judge's power to exclude it under Rule 403 as unduly prejudicial, confusing, or merely cumulative) for other purposes, for example to show the defendant's motive for committing the crime with which he is charged.

■ "Propensity" evidence and "motive" evidence need not overlap. They do not, for example, when past drug convictions are used to show that the defendant in a robbery case is an addict and his addiction is offered as the motive for the robbery. See, e.g., *People v. McConnell*, 124 Mich.App. 672, 335 N.W.2d 226, 230 (1983); cf. *People v. Moreno*, 61 Cal.App.3d 688, 693–94, 132 Cal.Rptr. 569 (1976) (man's theft of a woman's underwear); contra, *State v. LeFever*, 102 Wash.2d 777, 690 P.2d 574, 576–78 (1984) (addiction as motive for robbery). They do overlap when the crime is motivated by a taste for engaging in that crime or a compulsion to engage in it (an "addiction"), rather than by a desire for pecuniary gain or for some other advantage to which the crime is instrumental in the sense that it would not be committed if the advantage could be obtained as easily by a lawful route. See, e.g., *People v. Hancock*, 156 Cal.App.2d 305, 319 P.2d 731, 734 (1957) (possession of drugs); *State v. Wedemann*, 339 N.W.2d 112, 115 (S.Dak.1983) (firebug); but cf. *State v. Carty*, 231 Kan. 282, 644 P.2d 407, 411–12 (1982) (same, but motive not an issue). Sex crimes provide a particularly clear example. Most people do not have a taste for sexually molesting children. As between two suspected molesters, then, only one of whom has a history of such molestation, the history establishes a motive that enables the two suspects to be distinguished. In 1994, Rule 414 was added to the Federal Rules of Evidence to make evidence of prior acts of child molestation expressly admissible, without regard to Rule 404(b). See also Rules 413 and 415; *United States v. Roberts*, 88 F.3d 872 (10th Cir.1996) (per curiam). But the principle that we are discussing is not limited to sex crimes. A "firebug"—one who commits arson not for insurance proceeds or revenge or to eliminate a competitor, but for the sheer joy of watching a fire— is, like the sex criminal, a person whose motive to commit the crime with which he is charged is revealed by his past commission of the same crime. *State v. Wedemann, supra.* No special rule analogous to Rules 413 through 415 is necessary to make the evidence of the earlier crime admissible, because 404(b) expressly allows evidence of prior wrongful acts to establish motive. The greater the overlap between propensity and

motive, the more careful the district judge must be about admitting under the rubric of motive evidence that the jury is likely to use instead as a basis for inferring the defendant's propensity, his habitual criminality, even if instructed not to. But the tool for preventing this abuse is Rule 403, not Rule 404(b).

■ We do not have a complete overlap between evidence of propensity and evidence of motive in this case. Most people don't *want* Demerol; being a Demerol addict gave Cunningham a motive to tamper with the Demerol-filled syringes that, so far as appears, none of the other nurses who had access to the cabinet in which the syringes were locked had. No one suggests that any of the five nurses might have wanted to steal Demerol in order to resell it rather than to consume it personally. Because Cunningham's addiction was not to *stealing* Demerol but to consuming it, this case is like *Moreno*, where the defendant's sexual fetish supplied the motive for his stealing women's underwear, and *McConnell*, where the defendant's drug addiction supplied the motive to rob—he needed money to buy drugs. Cunningham was in a position to steal her drug directly.

The evidence of her addiction was thus admissible, *United States v. Troop*, 890 F.2d 1393, 1401–02 (7th Cir.1989); *United States v. Kadouh*, 768 F.2d 20, 21 (1st Cir.1985), unless the judge decided that its prejudicial effect—the effect that is inherent in any evidence that a jury, however instructed, might use to draw the forbidden inference that once a thief always a thief—clearly outweighed its probative value. He thought not, and we cannot say that this was an abuse of discretion. Remember that the judge excluded the evidence of Cunningham's conviction. That evidence would have been *de trop*, given the evidence of her addiction, which supplied the motive. What is more, the evidence of the conviction would not have distinguished between the addiction that furnished a motive to steal, and a propensity to steal—a nonaddict might steal drugs to resell them.

■ The evidence of Cunningham's suspension might seem to have been similarly superfluous and equivocal, as being merely the civil equivalent of the criminal conviction that the judge properly excluded. But the suspension, unlike the conviction, did not merely duplicate the evidence of Cunningham's addiction or insinuate a propensity to steal; it also provided essential background to the evidence of her having falsified the results of tests required as a condition of regaining her license. *That* evidence furnished the basis for an inference that she had falsified the test results in order to enable her to continue to feed her addiction without detection and without losing access to a "free" supply of the addictive substance, and so, like the addiction itself, established motive to tamper with the Demerol syringes. Granted, an alternative inference was that she had falsified the test results in order to be able to work as a nurse. But the jury was entitled to choose between these inferences, rather than having the evidence from which the inference was to be drawn withheld from them. Without knowing that she had been suspended, the jury would have wondered why she had been tested and had falsified the test results. The admission of bad-acts evidence to contextualize, and by contextualizing enable the jury to understand, other evidence is a recognized exception to the prohibition of bad-acts evidence. *United States v. Cox*, 923 F.2d 519, 523 (7th Cir.1991); *United States v. Mancari*, 875 F.2d 103, 105 (7th Cir.1989); *United States v. Moreno*, 991 F.2d 943, 946 (1st Cir.1993).

■ With the challenged evidence in, Cunningham's last argument—that the evidence of her guilt was insufficient to convict her of product tampering beyond a reasonable doubt—collapses. One of the nurses was the thief, and only one—Cunningham—was shown to have a motive. Her lawyer could have tried to show that another one had a motive too (not necessarily the same motive), but he did not. As a consequence, there was little doubt of her guilt. And she did flunk the urine test.

AFFIRMED.