**Connie F. CUNNINGHAM, Petitioner,**

v.

**Joseph SCIBANA, Respondent.**

**No. Civ.A. 1:00–0223.**

United States District Court,
S.D. West Virginia,
at Bluefield.

Oct. 3, 2000.

George H. Lancaster, Jr., Assistant Federal Public Defender, Edward H. Weis, Assistant Federal Public Defender, Charleston, WV, for petitioner Connie F. Cunningham.

Michael L. Keller, Assistant United States Attorney, Charleston, WV, for respondent Joseph Scibana.

### MEMORANDUM OPINION AND ORDER

FABER, District Judge.

I. Statement of the Case

Petitioner, Constance F. Cunningham ("Cunningham") was formerly a registered

nurse at a hospital in Indiana. She acknowledges having once been addicted to Demerol, a Schedule II controlled substance administered in hospitals as a powerful painkiller. Cunningham was charged with removing Demerol from syringes stored in a locked cabinet at the hospital where she worked and concealing the removal by substituting a saline solution for the Demerol. A jury convicted her of violating 18 U.S.C. § 1365(a) which forbids tampering with a consumer product "with reckless disregard for the risk that another person will be placed in danger of death or bodily injury and under circumstances manifesting extreme indifference to such risk."

Cunningham was sentenced to eighty-four months in prison and is currently incarcerated at FCI Alderson, West Virginia. Her conviction was affirmed by the United States Court of Appeals for the Seventh Circuit in a published opinion. *United States v. Cunningham*, 103 F.3d 553 (7th Cir.1996). On appeal Cunningham argued that her acts did not fit the definition of proscribed activity under 18 U.S.C. § 1365, which defines bodily injury to include physical pain. *See Cunningham*, 103 F.3d at 555; 18 U.S.C. § 1365(g)(4)(B). Cunningham contended that by depriving patients of Demerol, the worst her acts could have done was fail to relieve pain, and that failing to relieve pain is not the same as causing pain. *See Cunningham*, 103 F.3d at 555. The Court of Appeals rejected her argument and affirmed her conviction. *See id.*, at 555–57.

In March 1999, Cunningham was informed by the Bureau of Prisons ("BOP") that she was eligible for a Residential Drug Abuse Program which, if satisfactorily completed, could reduce her sentence by a period of up to one year. Later, but before Cunningham entered the program, the BOP told her she could still participate in the program, but would not be eligible for a reduction of sentence. The BOP based this decision on the fact that Cunningham's offense was defined as "a crime

of violence in all cases" under Section 6a(1) of Program Statement 5162.04

By statute, the sentence reduction, based upon completion of a treatment program, is available only to prisoners convicted of nonviolent offenses. *See* 18 U.S.C. § 3621(e)(2)(B). Cunningham elected to enter the program nevertheless, and successfully completed it. The BOP refused to reconsider its earlier determination that Cunningham was ineligible for a sentence reduction.

After exhausting her administrative remedies, Cunningham filed this action under 28 U.S.C. § 2241, seeking a writ of habeas corpus. She contends that, because she completed the treatment program, she is entitled to a one-year reduction in her sentence which, if allowed, would entitle her to immediate release. The magistrate judge to whom this case was referred for findings and recommendation believes that Cunningham's claim has merit. The matter is now pending before this court upon the Findings and Recommendation ("F & R") of the magistrate judge, the objections thereto filed by Respondent, Joseph Scibana, ("Scibana") Warden of FCI Alderson, West Virginia, and petitioner's response to the objections. This court respectfully disagrees with the Magistrate Judge and sustains Scibana's objections.

II. *The Statute, Regulation and Program Statement*

As part of the Violent Crime Control and Law Enforcement Act of 1994, Congress enacted 18 U.S.C. § 3621(e)(2)(B) which reads as follows:

(2) Incentive for prisoners' successful completion of treatment program.—...

(B) The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve.

The BOP adopted regulations designed to implement this program in 1995. As amended in October 1997, 28 C.F.R. § 550.58, the regulation at issue here, reads as follows:

> § 550.58 Consideration for early release.

> An inmate who was sentenced to a term of imprisonment pursuant to the provisions of 18 U.S.C. Chapter 227, Subchapter D [18 U.S.C. § 3581 *et seq.*] for a nonviolent offense, and who is determined to have a substance abuse problem, and successfully completes a residential drug abuse treatment program during his or her current commitment may be eligible, in accordance with paragraph (a) of this section, for early release by a period not to exceed 12 months.

> (a) *Additional early release criteria.* (1) As an exercise of the discretion vested in the Director of the Federal Bureau of Prisons, the following categories of inmates are not eligible for early release:

> \*     \*     \*     \*     \*     \*

> (vi) Inmates whose current offense is a felony:

>> (A) That has as an element, the actual, attempted, or threatened use of physical force against the person or property of another, or

>> (B) That involved the carrying, possession, or use of a firearm or other dangerous weapon or explosives (including any explosive material or explosive device), or

>> (C) That by its nature or conduct, presents a serious potential risk of physical force against the person or property of another, or

>> (D) That by its nature or conduct involves sexual abuse offenses committed upon children.

28 C.F.R. § 550.58 (emphasis added).

The BOP also adopted a Program Statement to supplement C.F.R. § 550.58. That Program Statement, 5162.04, entitled *Categorization of Offenses,* reads, in pertinent part, as follows:

Section 6. Offenses Categorized as Crimes of Violence:

> a. *Criminal Offenses That are Crimes of Violence in **All Cases.*** Some Bureau policies or programs require a determination that an inmate committed a crime of violence. . . . Other policies or programs, such as early release pursuant to 18 U.S.C. § 3621(e), indicate that an inmate could be denied the benefits of such programs if he or she was convicted of an offense listed in either Section 6 or 7.

> Any conviction for an offense listed below is categorized as a crime of violence.

> (1) *Title 18 United State[s] Code Sections*

> \*     \*     \*     \*     \*     \*

> 1365 tampering with consumer products *except* 1365(b), (c). . . .

The BOP relied upon this provision of P.S. 5162.04 to deny Cunningham early release under 18 U.S.C. § 3621(e)(2)(B). Under Section 6 of P.S. 5162.04, tampering with consumer products in violation of 18 U.S.C. § 1365(a) is, in all cases, a crime of violence which disqualifies the perpetrator from sentence reduction.

### III. *Positions of the Parties and Recommendation of Magistrate Judge*

Cunningham maintains that her offense of conviction was not a crime of violence, and that the BOP cannot make it such by regulation or program statement. She bases her argument principally on § 4B1.2(a)(1) of the United States Sentencing Guidelines which defines a "crime of violence" as a felony that "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) . . . otherwise involves conduct that presents a serious potential risk of physical injury to

another".[1] United States Sentencing Commission, *Guidelines Manual,* § 4B1.2 (Nov.1998). The Magistrate Judge agreed that Cunningham's offense is not a crime of violence, but for a slightly different reason—the Magistrate Judge relied upon the statutory definition of "crime of violence" found in 18 U.S.C. § 16. That statute provides:

§ 16. Crime of violence defined

The term "crime of violence" means—

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another or,

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The magistrate judge pointed out that the BOP nowhere defined crime of violence in its regulation or program statement and nowhere explained why it deemed violation of 18 U.S.C. § 1365(a) to be in all cases a crime of violence. "In the absence of a definition," said the magistrate judge, "the court must assume that the BOP meant to incorporate the statutory definition of 'crime of violence' found at 18 U.S.C. § 16." F & R, p. 11.

Scibana, in his objections to the F & R[2], protests that reference to the 18 U.S.C. § 16 definition of "crime of violence" is not compelled, even in the absence of an explanation by the BOP of how it gave meaning to the phrase. Scibana argues that the Magistrate Judge's recommendation does not take into consideration Congress's broad grant of discretion to the BOP which, he maintains, allows the BOP to determine which crimes are violent for purposes of 18 U.S.C. § 3621. The BOP, he argues, is under no compulsion to adopt the statutory definition of "crime of violence" contained in 18 U.S.C. § 16, nor must it accept the similar definition contained in the Sentencing Guidelines; rather, Congress's grant of discretion to the BOP is broad enough to allow any interpretation which is reasonable.

### IV. *Discussion*

■ This court agrees with Scibana. We begin with the proposition that the BOP and not the courts should run the country's prisons. Prison officials are the experts in the field; they are the ones with the knowledge and experience necessary to make practical and reasoned decisions in matters of prison administration. *See In re Long Term Administrative Segregation,* 174 F.3d 464 (4th Cir.1999), (holding that the evaluation of penalogical objectives is committed to the considered judgment of prison administrators). Congress implicitly recognized this proposition with the broad grant of discretion at issue here. Courts should interfere with BOP decisions only in those rare cases where a BOP determination violates the express mandate of a statute, clashes with the Constitution, or clearly contradicts the BOP's own rules, regulations or program statements. This is not such a case.

This case is squarely controlled by the decision of the United States Court of Appeals for the Fourth Circuit in *Pelissero v. Thompson,* 170 F.3d 442 (4th Cir.1999). There, the court said:

Congress entrusted the decision whether to grant inmates early release under

---

**1.** Cunningham also contends that her offense of conviction was nonviolent because of the specific manner in which she committed it. The Magistrate Judge (correctly in the view of this court) refused to consider this argument since the relevant statute, regulation and program statement all consider only the elements of the offense, not the specific facts of the particular violation.

**2.** Scibana's objections were originally due on July 18, 2000. On July 17 he filed a timely Motion to Extend Response Time and thereafter filed his objections on July 20. In the interest of justice and for good cause shown, Scibana's Motion to Extend Response Time is GRANTED and his objections are deemed timely filed.

18 U.S.C. § 3621(e)(2)(B) "solely to the discretion and expertise of the BOP, with a serious eye toward the public safety and welfare...." In exercising this discretion, the Bureau of Prisons must balance Congress's twin goals of providing an incentive for certain prisoners to undergo drug treatment while at the same time protecting the public from potentially violent criminals.

\*    \*    \*    \*    \*    \*

While the Bureau of Prisons' definition of a crime of violence may not be consistent with court interpretations of 18 U.S.C. § 924(c)(3), it is, nevertheless, a permissible and reasonable interpretation of the statute from which the Bureau derived its authority.

*Pelissero*, 170 F.3d at 447.

At issue in *Pelissero* was the decision of the BOP to classify the conviction of a felon for possession of a firearm as a crime of violence in all cases. The substantial risk of danger and the inherently violent nature of firearms, particularly in the hands of drug dealers and convicted felons, said the court, are sufficient to make reasonable the BOP's determination. *See id.* Accordingly, the petitioners in *Pelissero* were denied early release under 18 U.S.C. § 3621. *See id.* at 448.

■ There is no significant difference here. Tampering with consumer products, as that offense is defined in 18 U.S.C. § 1365(a), carries an equivalent risk. Placing another in danger of death or serious bodily injury is a specific element of that offense. Just as a firearm carried by a convicted felon in a drug deal poses an inevitable risk of injury or death, so does the replacement of a consumer medication with a poison, or with a substance that lacks the healing properties of the original drug. Cunningham, in appealing her original conviction, tried without success to draw a distinction in her case and convince the Seventh Circuit that she could not be guilty of violating § 1365(a). She argued that, because she replaced the stolen Demorol with saline solution or water, substances benign in and of themselves, the danger of bodily injury to others was absent. As noted above, the Court of Appeals was not convinced. The court observed: "[C]onduct that perpetuates an injury by preventing it from being alleviated by the product designed for that end is on the same footing as tampering that creates a fresh injury, as when the tamperer introduces a poison into a drug." *Cunningham*, 103 F.3d at 555. The decision of the BOP to classify this crime as a violent offense for purposes of early release under 18 U.S.C. § 3621 was well within the bounds of reasonable discretion. As the Fourth Circuit held in *Pelissero*, the BOP was under no compulsion to adopt other definitions of "violent crime" if to do so would, in its view, inadequately serve the goal of protecting the public from repeat offenders. *See Pelissero*, 170 F.3d at 447.

## V. *Conclusion*

Scibana's objections to the Findings and Recommendation of the magistrate judge are SUSTAINED and Cunningham's application for a writ of habeas corpus is DENIED.

Cunningham's motion, which she filed on September 18, 2000, for release on bond pending resolution of her § 2241 petition is rendered moot by this decision and is accordingly DENIED.

The Clerk is directed to mail a copy of this Memorandum Opinion and Order to counsel of record and to petitioner, pro se, and to retire this action from the active docket of this court.