Connie F. CUNNINGHAM, Petitioner–Appellant,

v.

Joseph SCIBANA, Respondent–Appellee.

No. 00–7486.

United States Court of Appeals, Fourth Circuit.

Argued April 5, 2001.

Decided Aug. 1, 2001.

**ARGUED:** Joseph Anthony Brossart, Legal Research and Writing Specialist, Charleston, WV, for Appellant. Michael Lee Keller, Assistant United States Attorney, Charleston, WV, for Appellee. **ON BRIEF:** Mary Lou Newberger, Acting Federal Public Defender, George H. Lancaster, Jr., Assistant Federal Public Defender, Charleston, WV, for Appellant. Rebecca A. Betts, United States Attorney, Charleston, WV, for Appellee.

Before WILLIAMS, MICHAEL, and TRAXLER, Circuit Judges.

Affirmed by published opinion. Judge MICHAEL wrote the opinion, in which Judge WILLIAMS and Judge TRAXLER joined.

## OPINION

MICHAEL, Circuit Judge:

Constance Cunningham was convicted of tampering with a consumer product with reckless disregard for and extreme indifference to the risk of human death or injury, in violation of 18 U.S.C. § 1365(a). Cunningham, who is still in prison, participated in a drug treatment program in an effort to qualify for the early release that Congress allows for an inmate convicted of a "nonviolent offense." The Federal Bureau of Prisons (BOP), however, found Cunningham ineligible for early release because a BOP policy statement classified her crime as a crime of violence in all cases. Cunningham filed an application for a writ of habeas corpus, which was denied by the district court. We are persuaded by the soundness of the BOP's judgment, reflected in its policy statement, to classify Cunningham's crime as one of violence. We therefore affirm.

### I.

Cunningham worked as a registered nurse in an Indiana hospital. Hospital staff discovered that someone was tampering with Demerol syringes by replacing the Demerol with a saline solution. Demerol is a powerful painkiller, similar to morphine; it is used for the relief of moderate to severe pain, as a preoperative medication, and as an obstetrical analgesic. *See Physicians' Desk Reference* 2571 (52d ed.1998). The police interviewed Cunningham and the four other nurses who had access to the Demerol syringes. Cunningham admitted that she had once been addicted to Demerol, but she denied current use. She agreed to a urine test, and the result was positive for Demerol.

The government indicted Cunningham for tampering with a consumer product

"with reckless disregard for the risk that another person will be placed in danger of death or bodily injury and under circumstances manifesting extreme indifference to such risk." 18 U.S.C. § 1365(a). The government's theory at trial was that Cunningham, in order to satisfy her addiction, removed the Demerol from the syringes and filled them with a saline solution to conceal her wrong-doing. The jury convicted Cunningham, and on January 26, 1996, she was sentenced to eighty-four months in prison. The Court of Appeals for the Seventh Circuit affirmed her conviction, rejecting her argument that her actions had not placed anyone in danger of "bodily injury." *See United States v. Cunningham*, 103 F.3d 553 (7th Cir.1996). The court began its analysis by noting that the tampering statute defines bodily injury to include "physical pain." *See id.* at 555 (citing 18 U.S.C. § 1365(g)(4)(B)). The court held that the withholding of pain medication causes "physical pain" because the act of withholding "perpetuates an injury [pain] by preventing it from being alleviated by the product designed for that end." *Id.*

Cunningham is serving her sentence at the Federal Prison Camp at Alderson, West Virginia. In March 1999, after Cunningham had been in prison for over three years, the BOP informed her that she was eligible for the Comprehensive Residential Drug Abuse Program. The BOP initially told Cunningham that she would qualify for a one year reduction in her sentence upon completion of the program. In June 1999, however, the BOP reversed its position, informing Cunningham that she did not qualify for early release because she had been convicted of a "Crime of Violence as contained in the Categorization of Offenses Program Statement." Cunningham nevertheless entered the drug treatment program and successfully completed it in July 2000.

Cunningham challenged, through the appropriate administrative channels, the BOP's determination that she was ineligible for early release. She argued that the BOP had improperly classified her crime, tampering with a consumer product in violation of 18 U.S.C. § 1365(a), as a crime of violence. Cunningham exhausted all of her administrative remedies without any success. She then filed an application for a writ of habeas corpus under 28 U.S.C. § 2241. The magistrate judge recommended that the writ be granted, but the district judge disagreed and denied Cunningham's application. We now have her appeal.

## II.

We start with a description of the statutory and regulatory framework for the drug treatment program in federal prisons. Congress has ordered the BOP to provide "every prisoner with a substance abuse problem ... the opportunity to participate in appropriate substance abuse treatment." 18 U.S.C. § 3621(e)(1). As an "[i]ncentive for prisoners' successful completion of [the] treatment program," the statute provides that "[t]he period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the [BOP], but such reduction may not be more than one year from the term the prisoner must otherwise serve." § 3621(e)(2)(B). Section 3621(e) does not define a "nonviolent offense."

To implement the statutory scheme, the BOP has promulgated a regulation and issued a program statement. *See* 28 C.F.R. § 550.58; Fed. Bureau of Prisons, U.S. Dep't of Justice, *Categorization of Offenses*, Program Statement 5162.04 (Oct. 9, 1997). The regulation repeats the statutory language, stating that only an inmate

convicted of a nonviolent offense who successfully completes the drug treatment program is eligible for early release. Like the statute, the regulation does not define a "nonviolent offense." *See* 28 C.F.R. § 550.58. Section 6 of the program statement fills in the definitional gap by designating certain offenses as "Crimes of Violence in All Cases." Program Statement 5162.04 § 6(a). An inmate convicted of one of these designated "crimes of violence" has not committed a "nonviolent offense" and is therefore ineligible for early release under the drug treatment program. Cunningham's offense, tampering with a consumer product in violation of 18 U.S.C. § 1365(a), is listed in the program statement as a crime of violence in all cases. *See* Program Statement 5162.04 § 6(a). The BOP relied on this listing in the program statement to deny Cunningham early release under 18 U.S.C. § 3621(e)(2)(B). The question for us is whether the BOP's listing (in the program statement) of Cunningham's offense as a crime of violence in all cases is consistent with Congress's statutory mandate that only an inmate convicted of a nonviolent offense is eligible for early release under the drug treatment program.

■ The BOP's program statement is an internal agency guideline that has not been subjected to the rigors of notice and comment rulemaking. *See Reno v. Koray,* 515 U.S. 50, 61, 115 S.Ct. 2021, 132 L.Ed.2d 46 (1995). The recent Supreme Court case of *Christensen v. Harris County,* 529 U.S. 576, 120 S.Ct. 1655, 146 L.Ed.2d 621 (2000), guides us in deciding how much deference to give to the BOP's designation of certain crimes as "crimes of violence in all cases" in section 6(a) of the program statement. In *Christensen* the Court declined to defer to the Department of Labor's statutory interpretation con-

tained in an opinion letter. The Court said:

> Interpretations such as those in opinion letters—like interpretations contained in policy statements, agency manuals, and enforcement guidelines, all of which lack the force of law—do not warrant *Chevron*-style deference. Instead, interpretations contained in formats such as opinion letters are "entitled to respect" under our decision in *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944), but only to the extent that those interpretations have the "power to persuade."

*Christensen,* 529 U.S. at 587, 120 S.Ct. 1655 (citations omitted). *See also Koray,* 515 U.S. at 61, 115 S.Ct. 2021 (noting that BOP program statements are "entitled to some deference"); *Pelissero v. Thompson,* 170 F.3d 442, 447 (4th Cir.1999) (recognizing that a policy statement does not carry as much weight as a rule); *Fristoe v. Thompson,* 144 F.3d 627, 631 (10th Cir. 1998) (using the "power to persuade" standard to strike down a former version of the program statement). In *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944), the Supreme Court explained what gives an agency interpretation, such as a program statement, the "power to persuade":

> We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance. The weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those fac-

tors which give it power to persuade, if lacking power to control.

Because the offense classification that disqualifies Cunningham for early release is contained in a BOP program statement instead of a regulation, we will respect the classification if the program statement packs sufficient power to persuade us.[1]

Cunningham argues that the BOP cannot classify 18 U.S.C. § 1365(a), tampering with consumer products, as a "crime of violence" in all cases because that crime does not fit the definition of "crime of violence" in 18 U.S.C. § 16. Section 16, found in the "General Provisions" chapter of the "Crimes" part of Title 18, provides:

The term "crime of violence" means—

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16. Cunningham's argument hinges on distinguishing the term "physical force" in § 16 from the term "bodily injury" in § 1365(a), which describes her offense. She maintains that while her crime involved reckless disregard and extreme indifference to the risk of "bodily injury," *see* § 1365(a), it was not a crime of violence because it did not include "physical force" as an element, nor did it involve

a substantial risk of "physical force," *see* § 16.

It is not enough for Cunningham to argue that her crime is not a "crime of violence" under 18 U.S.C. § 16. The BOP, in interpreting the drug treatment statute, is not required to define a "nonviolent offense" as one that is not a "crime of violence" under § 16. The drug treatment statute provides that "a prisoner convicted of a *nonviolent offense*" who successfully completes the treatment program is eligible for early release. § 3621(e)(2)(B) (emphasis added). Section 16 provides a definition for the term *"crime of violence."* Congress could have written in § 3621(e) that a prisoner convicted of "an offense that is not a 'crime of violence'" is eligible for early release. In fact, in other provisions Congress uses the exact term "crime of violence" and even specifies that the § 16 definition is applicable. *See, e.g.,* 8 U.S.C. § 1101(a)(43)(F) (defining "aggravated felony" for immigration law purposes as "a crime of violence ... as defined in section 16 of Title 18"); 18 U.S.C. § 3181(b)(1) (allowing for extradition of foreigners who have committed crimes of violence against U.S. nationals in foreign countries if the offenses "would constitute crimes of violence as defined under section 16 of this title"); 20 U.S.C. § 1232g(b)(6)(A) (allowing a postsecondary educational institution to disclose to a victim the final results of a disciplinary proceeding against a perpetrator of a "crime of violence (as that term is defined in section 16 of Title 18)"). In the provision at issue in this case, Congress chose to use

---

**1.** In *Christensen* the Supreme Court noted that *Chevron*-style deference is warranted for an agency's interpretation of an ambiguous regulation. *See Christensen*, 529 U.S. at 588, 120 S.Ct. 1655 (citing *Auer v. Robbins*, 519 U.S. 452, 461, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (interpretation is controlling unless "plainly erroneous or inconsistent with the regulation") (internal quotation marks and ci-

tations omitted)). This principle does not apply here: the BOP's regulation does not provide any definition of "nonviolent offense," so there is no ambiguous definition for the BOP to interpret. The BOP simply repeated the statutory language in the regulation and left its interpretation of "nonviolent offense" to a program statement.

the term "nonviolent offense" rather than "offense that is not a 'crime of violence.'" Although the two terms are quite similar, we must assume that Congress made a deliberate choice to use different language. The implication is that Congress did not mean to equate "nonviolent offense" with an offense that is not a "crime of violence." *See* 2A Norman J. Singer, *Statutes and Statutory Construction* § 46:06, at 194 (6th ed. 2000) ("The use of different terms within related statutes generally implies that different meanings were intended."). As a result, we decline to hold the BOP to § 16's definition of "crime of violence" for purposes of interpreting what a "nonviolent offense" means in § 3621(e).[2]

■■■ The BOP works backward in the program statement to determine whether a prisoner is convicted of a nonviolent offense for purposes of the drug treatment statute. The program statement classifies certain crimes as "crimes of violence in all cases" and then excludes those crimes from the "nonviolent offense" category. The question is whether we are sufficiently persuaded that the BOP made a proper judgment in categorizing Cunningham's offense, tampering with a consumer product, as a crime of violence in all cases. We recognize, of course, that the BOP's judgment was made in light of the purpose of the early release option for successful participants in the drug treatment program. The early release option has the "twin goals of providing an incentive for certain prisoners to undergo drug treatment while at the same time protecting the public from potentially violent criminals." *Pelissero*, 170 F.3d at 447. In characterizing

Cunningham's crime as violent in all circumstances, the BOP has determined that society should be afforded all allowable protection from an inmate who has tampered with a consumer product with reckless disregard and extreme indifference to the risk that someone could be injured or killed. The BOP, in running the nation's prisons, has accumulated experience and judgment that allows it to make informed decisions about various penological objectives, including punishment and rehabilitation. *See In re Long Term Admin. Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 469 (4th Cir. 1999) ("[T]he evaluation of penological objectives is committed to the considered judgment of prisons administrators ...." (internal quotation marks and citations omitted)). We are guided by the BOP's classification of § 1365(a) as a crime of violence because the decision appears to be based on the BOP's "body of experience and informed judgment." *Skidmore*, 323 U.S. at 140, 65 S.Ct. 161.

The BOP's judgment—to classify tampering with a consumer product in violation of § 1365(a) as a crime of violence—is supported by sound reasoning. *See id.* (according weight to agency judgment based on "the validity of its reasoning"). The BOP explains that because the § 1365(a) crime of consumer product tampering involves the risk of physical injury or death to the victim, the agency considers it to be a crime of violence. Violent crimes are described or defined in a similar way in certain other circumstances. For example, in determining the minimum

---

**2.** Cunningham also points to the definition of "crime of violence" in the "Penalties" provision of the "Firearms" chapter. 18 U.S.C. § 924(c)(3). That definition is identical to the one found in § 16, except that the offense described in § 16(a) has to be a felony. The BOP does not have to follow the § 924(c)(3) definition because it applies only "[f]or purposes of this subsection [§ 924(c) ]," which discusses the minimum penalties for a person who uses, carries, or possesses a firearm in connection with a crime of violence or a drug trafficking crime.

sentence for illegal firearms possession, a "violent felony" includes "conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). *See also U.S. Sentencing Guidelines Manual* § 4B1.2(a) (2000) (using the same definition of "crime of violence" for purposes of determining whether a defendant is a career offender). The BOP's ultimate judgment that tampering with a consumer product is *not* a "nonviolent offense" is consistent with the accepted meaning of the term "nonviolent offense." Because Congress did not define "nonviolent offense," the term may be interpreted with reference to the accepted definition of its opposite, a "violent offense." *See* 2A Singer, *supra,* § 47:28, at 336–38, 352. At least one highly respected dictionary indicates that a "violent" offense includes one that is "[c]haracterized by the doing of harm or injury." 19 *Oxford English Dictionary* 656 (2d ed.1989). Cunningham's crime, tampering with a consumer product, easily fits within this definition because the crime involves "the risk that another person will be placed in danger of death or bodily injury." 18 U.S.C. § 1365(a).

Moreover, the BOP has been consistent in its determination that § 1365(a)'s crime of consumer product tampering is violent in all cases. A former version of the program statement also classified § 1365(a) as a crime of violence in all cases. *See* Fed. Bureau of Prisons, U.S. Dep't of Justice, *Definition of Term—Crimes of Violence,* Program Statement 5162.02 § 7(a) (July 24, 1995). The BOP's consistency lends some additional weight to its classification decision. *See Skidmore,* 323 U.S. at 140, 65 S.Ct. 161 (according weight to agency judgment based on "its consistency with earlier and later pronouncements").

In sum, we are sufficiently persuaded by the BOP's decision to classify Cunning-ham's crime as violent in all cases because that decision is supported by experience and sound and consistent reasoning. Cunningham is thus ineligible for early release under the BOP's drug treatment program. Accordingly, we affirm the district court's order denying her application for a writ of habeas corpus.

*AFFIRMED.*