In the

# United States Court of Appeals
## For the Seventh Circuit

No. 04-2588

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

PHILIP M. SEBOLT,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 02 CR 648—**Ronald A. Guzman**, *Judge.*

ARGUED MARCH 29, 2006—DECIDED AUGUST 21, 2006

Before BAUER, KANNE, and SYKES, *Circuit Judges.*

KANNE, *Circuit Judge.* Philip Sebolt was charged with using his computer to commit various federal crimes involving child pornography. At trial, a host of "other acts" evidence was admitted, some of which Sebolt contested, and some of which he did not. After Sebolt was convicted on all counts, he was sentenced to 360 months' imprisonment. Sebolt appeals his convictions and his sentence. We affirm the convictions and order a limited remand of his sentence pursuant to *United States v. Paladino*, 401 F.3d 471, 481-84 (7th Cir. 2005).

## I. HISTORY

On March 14, 2002, FBI Special Agent Mark Miller of the Baltimore field office was in the course of his investigation into the online trading of child pornography. Miller logged on to two suspicious chat rooms, one named, "preteen666," and the other, "preteen411." In the "preteen666" chat room, Miller noticed that a person using the screen name "Blah35674" was running a file server and had pictures of young boys and girls available.

Miller connected to Blah35674's file server, which utilized a ratio program of 1:3. Essentially, the server would give a visitor three pictures for every one picture the visitor contributed. Miller uploaded his own innocuous files, which enabled him to download 53 images of child pornography from Blah35674's file server. Specifically, Miller uploaded an encrypted photograph onto the server and in return, the server sent him a picture of child pornography entitled "Helgav 044.jpg." To request this photograph, Miller had typed the command "Get Helgav 044.jpg." Before the server sent Miller the picture, it sent a message that the picture was "on its way."

At another time, Miller requested a file entitled "baby fuck 14.JPG" by typing "Get baby fuck14.JPG." In response, Miller received the message "Failed to send baby fuck 14.JPG." Miller then requested a file named "Cbaby 2.MPG" by typing "get Cbaby 2.MPG." In response, Miller received a message that the file was "on its way."

Miller testified that the server displayed a banner scrolling across an internet page, which stated:

> Upload Boy Baby Pics! Upload Boy Baby Pics! Upload Boy Baby Pics! Upload Boy Baby Pics! Upload Boy Baby Pics! I'm also looking for a text file for someone to msg me, on tips/tactics/advice on how to molest kids. I am not out to hurt or kidnap a kid. Just fun loving molesting. I have a web cam

and am willing to produce pics if I can successfully molest a kid/baby. Any help would be nice. :)

Miller contacted his FBI counterparts in Chicago. They determined that the internet protocol address associated with the screen name Blah35674 was registered through an internet service provider to Janet Sebolt in Bensenville, Illinois. The FBI, along with members of the Cook County Sheriff's Department and Bensenville Police Department, executed a federal search warrant for Janet Sebolt's address on July 1, 2002. After gaining entry to the residence, the officers found Janet's son, Philip Sebolt, in his bedroom deleting files on his computer. Officers unplugged the computer and began to search the residence.

Two officers interviewed Sebolt at his residence after orally advising him of his *Miranda* rights. Sebolt indicated that he understood his rights and would answer questions. Sebolt admitted that he was running a file server from his personal computer in his bedroom and that the server's purpose was to trade child pornography. Sebolt conceded that he used the screen name "Blah" followed by numbers when he traded child pornography and that he posted the aforementioned advertisement because he had a sexual attraction to young boys. Sebolt then identified specific items of child pornography, acknowledged that they were of real children, and estimated the children's ages. When asked if he had ever molested young boys, Sebolt stated that he had sexually assaulted a relative.

After the interview concluded, the officers took Sebolt to an FBI field office for processing. At the field office, Sebolt signed a written waiver of his *Miranda* rights and provided a handwritten statement. In the statement, Sebolt admitted to using his computer to possess child pornography and to distribute it over the internet. Sebolt confessed to printing several of these images, which he kept under his bed and used when masturbating. Sebolt also stated that he engaged in sexual relations with a 16-year-old girl in

Wisconsin whom he met on the internet, and that he had molested a young male relative several times (the same victim as Sebolt's oral confession).

The search of Sebolt's computer revealed more than 27,000 images of child pornography. Sebolt's computer also contained transcripts of online conversations Sebolt had with respondents to his advertisement requesting advice on molesting children. Five of these chats were found in a file labeled "how to molest," with one in a file labeled "personal," and another in a file labeled "kp." The online conversations centered on Sebolt's attempts to molest children without getting caught by law enforcement.

Officers also found on Sebolt's computer logs the computer had generated detailing the server's interactions with online visitors. The logs showed guests' requests for certain files and the server's responses. For instance, one of the logs showed that on June 25, 2002, someone using the screen name Gustave Premier ("Premier") sent files to Sebolt's server and requested in exchange files containing child pornography, including one entitled "hel-an09.jpg." After Premier requested "hel-an09.jpg," Sebolt's computer responded that "hel-an09.jpg is on its way." Officers also recovered approximately 250 pictures containing child pornography and a pair of boys' Pokemon underwear from beneath Sebolt's bed.

On March 26, 2003, a federal grand jury returned a four-count second superseding indictment charging Sebolt with violating various federal child pornography laws. Count 1 charged Sebolt with knowingly possessing child pornography. Counts 2 and 3 alleged Sebolt transported child pornography, namely computer images entitled "helgave049.jpg" and "hel-an09.jpg," for Counts 2 and 3, respectively. Count 4 charged Sebolt with advertising child pornography online.

Sebolt filed a pretrial motion in limine objecting to the introduction of evidence relating to his molestation of his young male relative. The motion in limine was denied. During the four-day jury trial, the government repeatedly referred to Sebolt's molestation of his relative. The government also made repeated reference to his trip to Wisconsin to have sex with a minor female, his failed attempts to molest other children, and the underwear under his bed. Sebolt made no objections at trial to the introduction into evidence of any of these other acts that occurred in addition to the acts of molestation that involved his relative.

Sebolt's strategy at trial was to admit to collecting child pornography but to deny distribution and advertisement. Sebolt proclaimed that his role was passive and that the logs were inaccurate. The jury disagreed and returned guilty verdicts against Sebolt on all counts.

On March 3, 2004, the district court held a sentencing hearing. The court applied the sentencing guidelines and found that several enhancements applied. The court calculated a criminal history category of I, and an offense level of 40, resulting in a sentencing range of 292 to 365 months. The court sentenced Sebolt to the statutory maximum prison term for each count: 60 months on Count 1, 120 months each on Counts 2 and 3, and 240 months on Count 4. The sentences on Counts 2 and 3 were to run concurrently with each other and consecutive to the sentence on Count 4. The sentence on Count 1 was to run concurrently with the other counts. The result was a sentence of 360 months' imprisonment.

Sebolt appeals his convictions and sentence.

## II. ANALYSIS

### A. *Sufficiency of the Evidence*

Sebolt argues there was insufficient evidence to support his conviction on Count 3, which alleged Sebolt "knowingly

transported and shipped child pornography, namely, a computer image entitled 'hel-an09.jpg,' in interstate commerce by means of a computer."

In challenging the sufficiency of the evidence, Sebolt "bears a heavy burden and faces a nearly insurmountable hurdle." *United States v. Seawood*, 172 F.3d 986, 988 (7th Cir. 1999) (citations omitted). The jury verdict is entitled to great deference, and we will uphold it if, viewing all facts and making all inferences in the prosecution's favor, "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Hicks*, 368 F.3d 801, 804-05 (7th Cir. 2004) (quoting *United States v. Gardner*, 238 F.3d 878, 879 (7th Cir. 2001)). We will overturn a conviction "only if the record is devoid of evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Curtis*, 324 F.3d 501, 505 (7th Cir. 2003) (citing *United States v. Menting*, 166 F.3d 923, 928 (7th Cir. 1999)).

To prove Sebolt guilty beyond a reasonable doubt on Count 3, the government was required to prove he transported the picture entitled "hel-an09.jpg" in interstate commerce. *See* 18 U.S.C. § 2252A(a)(1). Sebolt argues that although his computer may have generated a message that the image was "on its way" to Premier, there is no evidence that the image was ever sent because there is no evidence that the file was received.

Special Agent Miller testified that for every one of the 53 images he obtained from Sebolt's file server, he previously received a message that the file was "on its way." The reasonable inference, therefore, is that because the log contained a message that "hel-an09.jpg" was on its way to Premier, it was in fact transported to Premier.

Sebolt points to a failed transmission in which Miller requested a file by typing "get Cbaby 2.MPG" and received a message that the file was "on its way" but did not receive

this file. Sebolt argues that the incomplete transmission calls into question the accuracy of the log and negates the inference. But Sebolt does not mention Miller's testimony that his computer was disconnected from the internet one minute after receiving the message that "Cbaby 2.mpg" was "on its way," before which, a jury could reasonably conclude, the file could have been received. Nor does Sebolt discuss the 21-page log Sebolt's server generated when Premier visited, showing Premier exchanged numerous images with Sebolt's server. The message that the file "hel-an09.jpg" was "on its way" appeared on page 14, and there was no subsequent indication in the log that the file was not received.

Because Miller testified that there were 53 instances in which Sebolt's server generated the message that a file was "on its way" and sent the image, a jury could have reasonably inferred that Sebolt's server sent "hel-an09.jpg" when the log said this file was "on its way." The 54th instance, in which the message was generated but the file was not sent, was easily explained and sufficiently distinct so as not to turn a reasonable inference into an unreasonable one. Therefore, there was sufficient evidence to convict Sebolt on Count 3.

## B.  *Relevance and Fairness of the Evidence*

Next, Sebolt argues it violated Rules 403 and 404(b) of the Federal Rules of Evidence for the jury to have heard testimony that Sebolt (1) molested a young male relative; (2) drove to Wisconsin intending to have sex with a minor female; (3) kept a pair of boys' Pokemon underwear under his bed; and (4) discussed other thoughts and attempts to molest children.

Rule 404(b) prohibits the use of other acts evidence which tend to prove the defective character of a defendant "and likely therefore to have committed the crime of which he is accused in the present case, or perhaps some other, unde-

tected crime for which he should be punished." *Paladino*, 401 F.3d at 474-75. However, Rule 404(b) does not exclude such evidence if it is relevant to certain other issues, specifically the defendant's "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b); *United States v. Hale*, 448 F.3d 971, 985 (7th Cir. 2006) (per curiam) (citing *United States v. Macedo*, 406 F.3d 778, 792 (7th Cir. 2005)). Even if relevant, however, this evidence may be excluded as unduly prejudicial if it would cause the jury to ground its verdict on a ground other than the evidence. Fed. R. Evid. 403; *United States v. Whitlow*, 381 F.3d 679, 686 (7th Cir. 2004).

The government admits Sebolt's objection in his pretrial motion in limine to the admission of the evidence that he molested his relative, coupled with the district court's definitive denial, sufficiently preserved this issue for appeal. *See Wilson v. Williams*, 182 F.3d 562, 566 (7th Cir. 1999). We review the admission of the molestations for abuse of discretion. *See United States v. Rangel*, 350 F.3d 648, 650-51 (7th Cir. 2003) (citation omitted). Owing special deference to the district court's decision, we will not overturn it unless no reasonable person could agree with it. *United States v. Toro*, 359 F.3d 879, 884-85 (7th Cir. 2004) (citing *United States v. Thomas*, 321 F.3d 627, 630 (7th Cir. 2003)).

However, Sebolt made no objection to the admission of other evidence he now claims to have been wrongly admitted. We review the admission of that evidence for plain error. Fed. R. Crim. P. 52(b); *United States v. Pree*, 408 F.3d 855, 868 (7th Cir. 2005) (citations omitted). "Under this standard of review, we must find that: (1) an error occurred; (2) the error was 'plain,' that is, it was clear or obvious; and (3) the error affected the outcome of the district court proceedings." *United States v. Shearer*, 379 F.3d 453, 456 (7th Cir. 2004) (citing *United States v. Olano*, 507 U.S. 725,

731-35 (1993)). If so, then it is within our discretion to rectify forfeited errors which seriously affect "the fairness, integrity, or public reputation of the proceedings." *United States v. Henningsen*, 402 F.3d 748, 750 (7th Cir. 2005) (citations omitted).

Under either standard of review, we employ a four-part test to determine whether prior conduct is admissible under Rule 404(b) and will find no error if:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*United States v. Price*, 418 F.3d 771, 783-84 (7th Cir. 2005) (quoting *United States v. Asher*, 178 F.3d 486, 492 (7th Cir. 1999)).

The government made several references in all phases of the trial to Sebolt's admission that he had molested his relative. One theory of the government's case was that Sebolt had molested this boy for some time until the child had grown too old. Out of potential victims, the government hypothesized, Sebolt sought to sharpen his predatory skills so as to find new victims. The government claimed this was Sebolt's motive for posting his online advertisement, *i.e.*, the conduct alleged in Count 4.

Sebolt dissects the statutory elements of Count 4[1] and argues the prior molestations do not tend to prove any of them. We have rejected this rationale because Rule 404(b) explicitly makes motive relevant, and establishing motive tends to prove a crime was committed. *See United States v. Lloyd*, 71 F.3d 1256, 1264 (7th Cir. 1995) ("Although the defendant argues that motive was not one of the elements the government was required to prove in order to gain a conviction, motive to possess a firearm was 'relevant to the matter in issue.'" (quoting *United States v. Wilson*, 31 F.3d 510, 514 (7th Cir. 1994))). Prior instances of sexual misconduct with a child victim may establish a defendant's sexual interest in children and thereby serve as evidence of the defendant's motive to commit a charged offense involving the sexual exploitation of children. *See United States v. Cunningham*, 103 F.3d 553, 556 (7th Cir. 1996). It also may serve to identify the defendant to the crime. *See id.* We accept the government's argument that the evidence of Sebolt's prior molestation of his young male relative was admissible for the permitted purposes of proving motive and identity. Sebolt's own words to that effect could not have been more clear.

Nevertheless, the molestations must have "occur[red] close enough in time to the crime[s] charged to be relevant to [Sebolt's motive]." *See Lloyd*, 71 F.3d at 1264 (citation omitted). When Sebolt allegedly committed the charged offenses, approximately two years had passed since he last molested his relative. The two-year period is significant to proving Sebolt's motive because Sebolt considered his inactivity to be a dry spell. The cessation of the molestations was the starting point.

---

[1] 18 U.S.C. § 2251(d)(1)(A). Count 4 actually alleged a violation of 18 U.S.C. § 2251(*c*)(1)(A) (emphasis added). The statute was amended and re-codified shortly after the final charging instrument was issued. *See* Pub. L. No. 108-21, §506(2) (2003).

Sebolt does not dispute the third requirement of admissibility was met because his own admissions—his confession and his chat records—were the source of the molestation evidence. *See United States v. Joseph*, 310 F.3d 975, 978-79 (7th Cir. 2002).

The fourth consideration is whether the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. As discussed, Sebolt's history of molestation provided strong evidence of his motive to advertise child pornography online. Sebolt correctly states that evidence of child molestation is highly prejudicial. However it is not *unfairly* prejudicial in Sebolt's case. A limiting instruction was given regarding other bad acts evidence, and the government did not overstep its bounds in this regard.

The motive to molest children does not completely overlap with the propensity to possess, transport, or advertise child pornography. *See Cunningham*, 103 F.3d at 556-57. If it did, then there would be a greater chance that evidence of molestations introduced in this case was used to prove propensity. (Indeed, the motive to molest children would completely overlap only with the propensity to molest children.) And the conceptual gap between molestation and child pornography is not so wide as to "induce the jury to decide the case on an improper basis . . . rather than on the evidence presented." *United States v. Thomas*, 321 F.3d 627, 630 (7th Cir. 2004) (quotations and citations omitted). In other words, the molestations and the evidence supporting the statutory criminal elements were similar in character, *i.e.*, establishing Sebolt's sexually deviant mental state, so there is no reason to suspect the jury was inflamed by the admission of the molestations. The prejudicial effect did not substantially outweigh the probative value, and the molestations were appropriately admitted.

As noted, Sebolt did not object at trial to the admission of other evidence which he now contests was inappropriately admitted for the same reasons as the molestations. Sebolt

takes issue with the admission of evidence from his hand-written confession that two weeks prior to his arrest, he drove to Wisconsin to have sex with a 16-year-old girl whom he first met online. Sebolt's sexual misconduct resulting from an online relationship is relevant to his motive because it confirms he was indeed looking for "some fun loving molesting." Beyond alleging (incorrectly) this evidence is irrelevant, Sebolt makes no credible argument, and we need not discuss what easily falls within the remaining confines of Rule 404(b).

Nor was it error to admit other portions of Sebolt's online chats, in which he discussed his past experiences with other molesters. All of the acts—the details of which are insignificant—involved Sebolt's recent attempts, missed opportunities, and potential future opportunities to molest children. These acts are relevant to his motive as well, and were properly admitted without Sebolt's objection.

On the other hand, the admission of the underwear gives us pause. During the search, officers found a pair of young boys' Pokemon underwear under Sebolt's bed. When confronted with the underwear, Sebolt stated that he had found it on a sidewalk near his residence and that he put it on his face when masturbating. Similar to Sebolt's molesting activities, Sebolt's use of the underwear demonstrates his sexual interest in young boys and therefore is relevant to his motive.[2]

---

[2] We need not discuss the government's theory of relevance that because Sebolt knew the underwear was under his bed and it was found there, it proves Sebolt's knowledge that the child pornography was under his bed. The evidentiary source of Sebolt's knowledge of the underwear was the statement he made to officers during the search of his bedroom, at which point he also admitted knowledge of the child pornography. So the underwear had no independent probative value as to the presence of pornography.

But what is troubling is that, unlike the other evidence of Sebolt's motive which was gleaned from a computer log and a written confession and was read into the record, the actual physical underwear was introduced into evidence. In his interview, Sebolt had confessed to his use of the underwear, and he did not later dispute it. Because this point was well established and unrebutted; there was no probative value for admitting the physical evidence of his motive. Little imagination is necessary to conclude the underwear was unfairly prejudicial.

Even if the underwear's probative value was substantially outweighed by its prejudicial effect, however, Sebolt does not show that he "probably would have been acquitted but for the erroneously admitted evidence." *United States v. Wynn*, 845 F.2d 1439, 1443 (7th Cir. 1988) (citations omitted); *United States v. Wilson*, 966 F.2d 243, 246-47 (7th Cir. 1992) (finding no plain error because "[t]he record is replete with evidence from which the jury could convict [the defendant]"). Nevertheless the reason why the underwear had no probative value—the numerous other evidentiary sources from which the jury could have convicted Sebolt—also warrants against reversal. In particular, Sebolt's handwritten confession and file server log provided overwhelming evidence of his guilt.

## C. *Testimony About Pornographer*

A British detective testified about the real life events depicted by "hel-an09.jpg" and "helgave049.jpg." A British man abused his stepchildren and one of their friends, and the man posted pictures of the abuse on the internet. After he was convicted, the detective visited him in prison. The man verified the authenticity of several images, including "hel-an09.jpg" and "helgave049.jpg," and the identities of the children in them. Sebolt argues the jury heard testimony that another individual who had possessed the

same pictures at issue in Sebolt's case had already been convicted by a court. Again, Sebolt did not object, and, as previously discussed, we review for plain error only.

Putting to one side the issue of plain error, Sebolt was in no way prejudiced by the exposure of the jury to the other man's conviction. In order to obtain reversal, Sebolt must show that the admission of the contested evidence affected his substantial rights. *See Pree*, 408 F.3d at 868 (citations omitted). The only prejudicial effect we can imagine (for Sebolt has not mentioned any), would be for the jury to have relied upon the conviction, rather than the evidence, to conclude the images on the pictures constituted child pornography within the meaning of the charged offenses. There is no dispute about the lurid content of the photographs and images the jury viewed. The evidence proving Sebolt possessed child pornography was so overwhelming, at closing arguments, Sebolt practically admitted to the possession charge.

## D. *Sebolt's Sentence*

Sebolt does not take issue with the district court's legal conclusions in calculating his sentence under the Guidelines. He makes a general objection to the factual basis of these results, however. Realizing his *Crawford* claim was doomed from the start, *see United States v. Roche*, 415 F.3d 614, 618 (7th Cir. 2005), Sebolt withdrew it. Now Sebolt challenges the use of hearsay, on due process grounds, at his sentencing hearing at which an FBI special agent testified to the statements made by people he encountered during his investigation, namely Sebolt's girlfriend and other alleged victims. The statements, to which Sebolt did not object, asserted that Sebolt molested young neighbors and a child in a public restroom. Even if this testimony were stricken, however, the Guideline calculations would have been no different. The trial record provides ample

support for Sebolt's sentencing enhancements. Without a discernible deprivation, further discussion is unwarranted.

The district judge imposed Sebolt's sentence prior to the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220 (2005), and both sides agree it did so under the erroneous impression that the Guidelines were mandatory. *See United States v. Cunningham*, 405 F.3d 497, 504-05 (7th Cir. 2005). Although Sebolt did not object at the time, he does now with the benefit of hindsight, and we review for plain error. *United States v. Johnson*, 427 F.3d 423, 429 (7th Cir. 2005) (citing *Paladino*, 401 F.3d at 481-84).

The district judge considered each enhancement offered by the government and objected to by Sebolt. The judge overruled most, but not all, of Sebolt's objections to the enhancements. The judge thoroughly discussed his reasons to ensure that the sentencing range reflected the seriousness of Sebolt's conduct and the sheer volume of pornography he possessed, which almost doubled his sentencing range. The judge sentenced Sebolt a mere five months fewer than the top of that range. It is unlikely the judge would impose a lesser sentence on Sebolt with the understanding that the Guidelines are advisory, but these circumstances are mere "indicators rather than assurances." *See United States v. Lee*, 399 F.3d 864, 866-67 (7th Cir. 2005). Because there is room to speculate, the better course is to ask the district judge. We therefore will order a limited remand pursuant to the procedure set forth in *Paladino*, 401 F.3d at 481-84, to inquire of the sentencing judge whether, if given the opportunity to resentence, he would impose the original sentence.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM Sebolt's convictions and order a LIMITED REMAND pursuant to the procedure set forth in *Paladino*.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*