NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-1185
_____

UNITED STATES OF AMERICA

v.

PETER FRATUS,
                    Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 2-20-cr-00270-001)
District Judge: Honorable Gerald J. Pappert

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on February 7, 2023

Before: CHAGARES, *Chief Judge*, SCIRICA, and RENDELL, *Circuit Judges.*

(Filed: March 30, 2023)

_____

OPINION*

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

Peter Fratus was convicted of transmitting threats in interstate commerce, 18 U.S.C. § 875(c), after sending Philadelphia's police commissioner racist and threatening emails. He was sentenced to four years of imprisonment and three years of supervised release. Fratus now appeals his conviction and sentence, challenging the admission of certain evidence, the sufficiency of the evidence underlying his conviction, and the District Court's application of the Sentencing Guidelines. We find no error and will affirm.

## I.[1]

On the night of June 6, 2020, Peter Fratus, using a false name, sent two emails to Philadelphia Police Commissioner Danielle Outlaw. The first email said: "Calling the police now for an emergency. No answer. Dirty n****r! Find a n****r hang a n****r. Jews into the ovens!!!"[2] Fratus Br. 5. The second, sent one minute later, began with a subject line of "Find a n****r kill a n****r." *Id.* It read: "Where does police chief live?" JA47. He sent these emails to the address police.comissioner@phila.gov after searching online for the Philadelphia Police Department and visiting its website.

Just minutes later, Fratus called the Jewish charity Kars4Kids. He spoke to a representative of the charity and said, "Find a Jew, Kill a Jew. I'll find out where that fucking day camp is and I'll find out where they are and I'll kill all those fucking kids, how about that?" Fratus Br. 14. Fratus called Kars4Kids three more times that night and the next

---

[1] We write solely for the parties and so only briefly recite the essential facts.
[2] Following the practice of the parties and the District Court, "[t]his Court has censored Fratus's racial slurs. Fratus did not." *United States v. Fratus*, No. 20-CR-270, 2021 WL 3145732, at *1 n.1 (E.D. Pa. July 26, 2021).

day. *Fratus*, 2021 WL 3145732, at *1. He left voicemails threatening to "Find a Jew, Kill a Jew" and promising to put Jews "in [the] oven." *Id.* Fratus said in one voicemail that he wanted to "blow up the Jewish heritage" and added in two more that he was "trying to find out where Jews live so I can kill them." *Id.*

As a result of his emails to the police commissioner, Fratus was arrested by the FBI at his Massachusetts home on June 16, 2020. A grand jury in the Eastern District of Pennsylvania charged Fratus for sending those emails, indicting him for a single count of transmitting an interstate threat in violation of 18 U.S.C. § 875(c).

Fratus' trial began shortly after his indictment. The Government sought to introduce against Fratus "eight prior incidents in which Fratus threatened or assaulted individuals in a racist, misogynistic, or antisemitic manner." United States Br. 17. Fratus objected, and so the District Court heard argument on the issue and allowed the Government to introduce only two. *Fratus*, 2021 WL 3145732, at *4-5. First, the court allowed the government to introduce recordings of the previously described phone calls Fratus made to Kars4Kids. *Id.* at *1. Second, the court admitted evidence of a voicemail that Fratus left for Congresswoman Maxine Waters two years earlier replete with racial slurs and references to lynching. *Id.* at *2, 4. The court gave proper limiting instructions regarding this evidence both when it was introduced and before the jury's deliberations.

At his trial, Fratus did not deny that he sent the emails he was charged with sending. His principal defense was that his threats were the result of his longstanding "problem with alcohol consumption." Fratus Br. 8-9. Fratus testified that he was not aware of the

3

commissioner's race (she is Black) and did not intend to threaten her. The jury unanimously convicted him.

The District Court denied Fratus's post-trial motions for acquittal and for a new trial and proceeded to sentencing. Fratus faced a statutory maximum of five years. The court calculated an advisory range for Fratus's sentence under the Sentencing Guidelines of 41 to 51 months. Ultimately, the court considered the relevant factors under 18 U.S.C. § 3553 and imposed a sentence of 48 months imprisonment and three years supervised release.

## II.[3]

### A.

Fratus contends the District Court erred in allowing the jury to hear evidence about his threatening phone calls to Kars4Kids and Congresswoman Waters. We conclude that the court did not abuse its discretion in admitting this evidence. *See United States v. Fattah*, 914 F.3d 112, 175 (3d Cir. 2019) ("This Court reviews a district court's application of Rule 404(b) for abuse of discretion.").

The Federal Rules of Evidence generally prohibit introducing evidence of a defendant's "prior bad acts" to show his "propensity to commit the charged crime." *United States v. Caldwell*, 760 F.3d 267, 275 (3d Cir. 2014). But "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

---

[3] The District Court had jurisdiction over this federal criminal case under 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

We apply a four-part test to determine whether such evidence may be admitted. *United States v. Garner*, 961 F.3d 264, 273 (3d Cir. 2020). Evidence of prior bad acts "is admissible only if it is (1) offered for a proper purpose under Rule 404(b)(2); (2) relevant to that purpose; (3) sufficiently probative under the Rule 403 balancing requirement; and (4) accompanied by a limiting instruction, if requested." *United States v. Davis*, 726 F.3d 434, 441 (3d Cir. 2013); *accord Garner*, 961 F.3d at 273.

The District Court carefully considered the issue and concluded that Fratus's calls to Kars4Kids and Congresswoman Waters passed this test. We agree.

Fratus's other calls were offered for and relevant to many proper purposes. "The plain text of Rule 404(b) allows for the admission of other-acts evidence to show knowledge and intent as the Government proffered here." *United States v. Repak*, 852 F.3d 230, 242 (3d Cir. 2017). The Government was required to prove that Fratus intended to threaten his victim. *United States v. Elonis*, 841 F.3d 589, 595-96 (3d Cir. 2016). Fratus testified at trial that he did not intend his emails to be threats. JA260. In doing so, he "put his mental state at issue in this case." *Repak*, 852 F.3d at 242. We agree with the District Court that Fratus's calls were relevant to "determining whether Fratus had the requisite intent to threaten." *Fratus*, 2021 WL 3145732, at *4. The fact that Fratus sent racist threats on other occasions seriously weakened his claim that he did not mean to threaten the police commissioner. The calls also helped prove Fratus's racist motive in sending the threats. *See United States v. Sebolt*, 460 F.3d 910, 917 (7th Cir. 2006) ("Rule 404(b) explicitly makes motive relevant, and establishing motive tends to prove a crime was committed."). Relatedly, the evidence of Fratus's prior calls tended to show that Fratus had not sent his

threats by mistake. *See United States v. Cordero*, 973 F.3d 603, 620 (6th Cir. 2020) ("[A]bsence of mistake is in issue where a defendant admits involvement in a specific event but asserts that he acted unwittingly or with honest intent." (alteration in original)). This too was a permissible purpose.

Nor did the District Court err in its Rule 403 analysis. That rule allows the court to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. Evidence of Fratus's other racist threats was highly probative. Fratus's other actions were strong evidence that he was motivated to make racist threats, that he intended his emails to be threatening, knew they would be perceived as threats, and did not send them by mistake. This would justify its admission even if there were a "large risk of unfair prejudice." *United States v. Cross*, 308 F.3d 308, 323 (3d Cir. 2002).

Fratus objects that hearing about his prior threats would improperly "instill in the jury 'an intense disgust'" for him. Fratus Br. 18 (quoting *United States v. Cunningham*, 694 F.3d 372, 391 (3d Cir. 2012)). But the jury would have heard about Fratus's racist and violent emails to the police commissioner in any event. The content of those emails was broadly similar to the content of Fratus's phone calls. Since the unquestionably admissible evidence regarding Fratus's emails was "similar in character" to the evidence of Fratus's phone calls, "there is no reason to suspect the jury was inflamed by admission" of the calls. *Sebolt*, 460 F.3d at 917. Besides, the District Court carefully parsed these risks, excluding six of the Government's proposed eight bad acts on the grounds that "each act seriously risks unfairly prejudicing Fratus." *Fratus*, 2021 WL 3145732, at *5.

6

Fratus faults the District Court for giving "too much weight to [the] similarity of the communications and their underlying racist content." Fratus Br. 18. But these factors were precisely the ones the court should have taken into account. "[T]he more similar the prior act is . . . to the act being proved, the more relevant it becomes." *United States v. Williams*, 740 F.3d 308, 314 (4th Cir. 2014) (quoting *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1992)); *accord United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000). Any remaining risk of prejudice was reduced by the court's proper limiting instructions. *United States v. Lee*, 612 F.3d 170, 191-92, 191 n.25 (3d Cir. 2010).

"When a court engages in a Rule 403 balancing and articulates on the record a rational explanation, we will rarely disturb its ruling." *United States v. Sampson*, 980 F.2d 883, 889 (3d Cir. 1992). The record indicates the District Court did just that. We decline to disturb its rulings.

### B.

Fratus also challenges the sufficiency of the evidence underlying his conviction. His argument recapitulates his trial defenses—that he did not intend to threaten anyone because he was drunk, and that his emails were not "true threats." Fratus Br. 21-24. The jury's "verdict must be upheld as long as it does not 'fall below the threshold of bare rationality.'" *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 431 (3d Cir. 2013) (en banc) (quoting *Coleman v. Johnson*, 566 U.S. 650, 656 (2012)). This jury's verdict easily clears that bar.

Fratus reprises his voluntary intoxication defense from trial. But Fratus admits that "[t]he District Court correctly instructed the jury" on this defense. Fratus Br. 21. Of course, the jury was not required to accept Fratus's defense.

Fratus also contends that the Government failed to prove that his communications were "true threats." Fratus Br. 23. He describes them instead as "nonsensical, racist, tirades—not expressions of harm or threats." *Id.* To reiterate, Fratus's emails said (among other things) "[f]ind a n****r, hang a n****r," and "[w]here does [the] police chief live?" It was reasonable for the jury to find that these emails were "serious expression[s] of an intent to inflict bodily injury" on the commissioner. *See Elonis*, 841 F.3d at 597.

The jury was entitled to conclude from the openly violent and racist nature of the emails that Fratus intended those emails to threaten Commissioner Outlaw. *See id.*, 841 F.3d at 596-97. And the evidence of Fratus's other threats similarly allowed the jury to conclude that he meant what he said. *See United States v. Jongewaard*, 567 F.3d 336, 341-42 (8th Cir. 2009) (evidence of other threats properly used to "show the seriousness of later threats" (cleaned up)). The evidence at trial was amply sufficient to justify Fratus's conviction.

## III.

Finally, Fratus argues that the District Court erred in calculating his sentence. We "review factual findings relevant to the [Sentencing] Guidelines for clear error" and "exercise plenary review over a district court's interpretation of the Guidelines." *United States v. Grier*, 475 F.3d 556, 570 (3d Cir. 2007) (en banc). We conclude that the District Court applied the Guidelines correctly.

Fratus argues that the District Court made two mistakes in calculating the applicable Guidelines range. First, he objects to the imposition of a three-level increase under U.S.S.G. § 3A1.2(a), which applies when "the victim was a government officer or

8

employee" and "the offense of conviction was motivated by such status." Fratus says that the Government failed to show that he "knew of Commissioner Outlaw's official position" in sending his emails. Fratus Br. 26. This argument is not credible. Fratus sent threats to the email address police.commissioner@phila.gov. He wrote in those emails "Where does [the] police chief live?" JA47. The District Court did not err in determining that Fratus was motivated by his victim's official position.

Second, Fratus argues that the District Court should have reduced his sentence because his crime "involved a single instance evidencing little or no deliberation." U.S.S.G. § 2A6.1(b)(6); Fratus Br. 27-28. But the court, which had before it evidence of many of Fratus's threats, was entitled to conclude that Fratus's crime involved more than a single instance. *See United States v. Osborn*, 12 F.4th 634, 639-40 (6th Cir. 2021) (affirming district court's decision to deny reduction where defendant "had a pattern of calling government officials . . . and threatening them"); *United States v. Freeman*, 176 F.3d 575, 578 (1st Cir. 1999) (denying reduction where defendant "made at least two threatening communications"). The court also did not clearly err in finding that Fratus—who researched his intended victim and took steps to avoid detection—"demonstrate[d] sufficient deliberation" in committing his crime. *United States v. Cothran*, 286 F.3d 173, 179 (3d Cir. 2002).

\*\*\*

We will affirm the judgment of conviction and sentence.