[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-14128

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

YNDDY BLANC,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:22-cr-60012-JIC-1

_____

Before WILLIAM PRYOR, Chief Judge, and JORDAN, and MARCUS, Circuit Judges.

PER CURIAM:

Following a multi-day trial, a federal jury convicted Ynddy Blanc of two charges based on child pornography found on his cell phone: transportation of child pornography, in violation of 18 U.S.C. § 2252(a)(1) & (b)(1); and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B). The district court sentenced him to 168 months of imprisonment, a term within the advisory range under the Sentencing Guidelines. He now appeals, raising a number of challenges to his convictions and his sentence. Following a review of the record, and with the benefit of oral argument, we affirm.[1]

**I**

We summarize the evidence presented at trial in the light most favorable to the government. *See United States v. Mapson*, 96 F.4th 1323, 1328 (11th Cir. 2024). Before doing so, we set out the elements of the charged offenses to provide context for the issues presented on appeal.

To convict Mr. Blanc of the transportation offense under 18 U.S.C. § 2252(a)(1), the government had to prove that he "'knowingly transport[ed] or ship[ped]' the [child] pornography 'using any means or facility of interstate or foreign commerce or in or

---

[1] We address only the issues that we believe warrant discussion. With respect to any issues not specifically discussed, we summarily affirm.

affecting interstate or foreign commerce by any means including by computer or mails.'" *United States v. Little*, 864 F.3d 1283, 1288 n.1 (11th Cir. 2017) (quoting § 2252(a)(1)). To convict him of the possession offense under 18 U.S.C. § 2252(a)(4)(B), the government had to prove that he "knowingly possesse[d]" child pornography which "'ha[d] been shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, or which was produced using materials which have been mailed or so shipped or transported, by any means including by computer.'" 18 U.S.C. § 2252(a)(4)(B). Both charges, then, required the government to prove that Mr. Blanc knew that his cell phone contained child pornography.

## A

In April of 2021, Mr. Blanc initiated a Facebook Messenger conversation with an undercover officer who was posing as a 14-year-old girl. He requested photos of the fictitious child and asked if she liked performing or receiving oral sex, if she had been involved in threesomes, and if she had a favorite sex position. He accepted an invitation to meet the fictitious child at her home in St. Petersburg, Florida, for sexual activity and said he would bring condoms. When he arrived at a nearby park, police officers from the St. Petersburg Police Department arrested him. The officers searched him and found condoms and two cell phones, including the one he had used to communicate with the fictitious child. There was no evidence of child pornography, or searches for child pornography, on the phones.

4                    Opinion of the Court                    22-14128

The state charged Mr. Blanc with the attempted enticement of a child in violation of Fla. Stat. § 847.0135(4)(A) (prohibiting, in relevant part, "travel[ing]" within the state "for the purpose of engaging in . . . unlawful sexual conduct with a child or with another person believed by the person to be a child after using a computer online service [or] Internet service" to "[s]educe, solicit, lure, or entice or attempt to seduce, solicit, lure, or entice a child or another person believed by the person to be a child, to engage in . . . unlawful sexual conduct"). He was released on bond pending trial.

While on bond for the attempted enticement charge, Mr. Blanc traveled to Haiti to visit family members. He returned to the United States on January 19, 2022, through the Ft. Lauderdale Airport, where Customs and Border Patrol officers referred him for secondary inspection based on the pending state criminal case.

When they conducted a preliminary search of his cell phone (with the password provided by Mr. Blanc) CBP officers found one video of child pornography in a photo album that stored content received from WhatsApp, a phone application used for making phone calls and exchanging messages.

A user must go to the app store on his phone to download WhatsApp. Once it is installed, WhatsApp automatically saves videos and images received through its chats to the user's phone unless the user elects to change the default settings. Mr. Blanc's phone was set to the default settings, and WhatsApp therefore automatically downloaded child pornography onto the phone.

A grand jury returned an indictment charging Mr. Blanc with the transportation and possession of child pornography. Mr. Blanc defended against the charges on the ground that the child pornography videos on his phone—which he had owned for about eight months—were automatic downloads from the WhatsApp program that he was unaware of.

**B**

Following the discovery of the child pornography, Special Agents Jeanne Neill and Eric Stowers from the Department of Homeland Security interviewed Mr. Blanc. He waived his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), consented to a search of his phone, and agreed to be interviewed. The recorded interview took about one and half hours, including a break.

Mr. Blanc told Agents Neill and Stowers that he used WhatsApp and that some of the groups that he belonged to exchanged pornographic videos, including "kids porn." He also recalled seeing a couple of child pornography videos through these groups and described one of the videos from memory. He also said that he had seen another video involving a 10-year-old girl performing oral sex on an adult male. But he denied seeing other pornographic videos found on his phone, and explained that any videos he received through WhatsApp would "automatically download" to his phone without his knowledge and be saved both to his "pictures" on the phone's camera roll and to a designated WhatsApp folder in the phone's photo album. He acknowledged that he did

not delete child pornography videos from his phone after seeing them.

Brian Hixson, a DHS computer forensic analyst, found 18 videos of child pornography on Mr. Blanc's phone. Over defense objection, video clips from some of the videos were played for the jury.

Of the 72 WhatsApp groups on the phone, 67 had zero child pornography videos. And for the five groups that had child pornography videos, those videos were a small percentage of the downloads. For example, the "Men neg" group had 1,696 downloads but only two child pornography videos.

According to the videos' metadata, Mr. Blanc received the videos through WhatsApp from five different group chats that he had joined or created himself. One of the group chats had a Haitian Creole title ("Rache [Pwel] Timoun 2000") which in context meant having sex with children in a manner so rough that their pubic hair falls off.

Mr. Blanc told Agents Neill and Stowers that he had removed himself or been removed from some of the groups that were sharing child pornography, and made critical comments about that content when he saw it. Agent Neill confirmed that she saw removal messages in certain groups, including one dated November 24, 2021, in which Mr. Blanc had been removed. Agent Neill said, however, that she could not find evidence on the phone that he had removed himself from other group chats because the

Cellebrite extraction report from the forensic examination indicated that a search for the words "you left" yielded negative results.

The forensic examination of the phone showed that at the time of his arrest Mr. Blanc was still an active member of some of the groups that were sharing child pornography. The examination also indicated that he had opened these chats sometime after the pornographic videos had been received. But the Cellebrite program that Mr. Hixson used for the phone could not tell when a person opened and viewed a video.

According to Agent Neill, Mr. Blanc was confused during a part of the interview. For example, when she was asking him about the January 2022 videos she had found, he was talking about the November 2021 timeframe, when he said he had removed himself from a chat group.

## II

Mr. Blanc challenges some evidentiary rulings by the district court. We discuss them below.

## A

The government, over defense objection, presented evidence at trial about the April 2021 events leading to the arrest of Mr. Blanc in Florida for the attempted enticement of a child. *See* Fla. Stat. § 847.0135(4)(a). He argues that this evidence did not satisfy Rule 404(b)'s requirements.

Rule 404(b)(1) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in

order to show that on a particular occasion the person acted in accordance with the character." But Rule 404(b)(2) allows such evidence "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." As we have said, subsection (b)(2) is a rule "of inclusion which allows [extrinsic] evidence unless it tends to prove only criminal propensity." *United States v. Ellisor*, 522 F.3d 1255, 1267 (11th Cir. 2008) (citation and internal quotation marks omitted).

To be admissible under Rule 404(b)(2), extrinsic evidence must be relevant to an issue other than the defendant's character and sufficient for the jury to find by a preponderance that the defendant committed the extrinsic act. Its probative value must also not be substantially outweighed by its undue prejudice, and it must otherwise satisfy Rule 403. *See United States v. Nerey*, 877 F.3d 956, 974 (11th Cir. 2017); *United States v. Cenephat*, 115 F.4th 1359, 1365 (11th Cir. 2024).

Mr. Blanc argues that the government used the evidence concerning his attempted solicitation arrest as impermissible propensity evidence because the intent element for that charge is different than the intent for the child pornography transportation and possession offenses. We disagree.

In admitting the evidence under Rule 404(b), the district court noted that Mr. Blanc's primary defense was a "lack of knowledge of the images being stored in the WhatsApp photo album of [his] cell phone." D.E. 115 at 35. It then reasoned that

evidence that he had previously used his phone to communicate with someone he thought was a minor and then traveled to meet that fictitious child for sex helped to establish his knowledge. First, the jury could use the evidence to find that he had a sexual interest in children and that he joined certain WhatsApp group chats for the purpose of obtaining and viewing child pornography. Second, the evidence was "highly probative" of his knowledge of the WhatsApp videos and rebutted any claim that he obtained the videos by "mistake or accident." Third, one of the videos—showing two adults and a child being abused—when viewed in light of his question to the fictitious minor about threesomes, helped remove doubt about his intentions in acquiring the child pornography. Fourth, knowledge and lack of mistake or accident are non-propensity reasons under Rule 404(b). *See id.* at 36–37.

Reviewing for abuse of discretion, *see United States v. Diamond*, 102 F.4th 1347, 1353 (11th Cir. 2024), we do not discern any error. Mr. Blanc defended against the child pornography charges on the ground that he did not know about the videos on his cell phone. And in a somewhat similar child pornography case where the defendant argued in part "that someone else downloaded child pornography onto his computer or, alternatively, that it happened automatically," we affirmed the admission of Rule 404(b) evidence that he had previously "engaged in sexual acts with minors" in another country; such evidence was not impermissible propensity evidence but rather went to the issues of knowledge, identity, or absence of mistake or accident. *See United States v. Kapordelis*, 569 F.3d 1291, 1313 (11th Cir. 2009). We come to the same conclusion here.

In addition, "[m]otive is always relevant in a criminal case, even if it is not an element of the crime." *United States v. Hill*, 643 F.3d 807, 843 (11th Cir. 2011) (citation and internal quotation marks omitted). Under Rule 404(b)(2) extrinsic evidence can be used to establish motive, and "[p]rior instances of sexual misconduct with a child victim may establish a defendant's sexual interest in children and thereby serve as evidence of the defendant's motive to commit a charged offense involving the sexual exploitation of children." *United States v. Sebolt*, 460 F.3d 910, 917 (7th Cir. 2006) (affirming, in a case charging child pornography offenses, the admission of Rule 404(b) evidence that the defendant had molested a young male relative and driven to another state intending to have sex with a minor female).

We also reject Mr. Blanc's assertion that the district court abused its discretion in concluding that the probative value of the evidence was not substantially outweighed by its undue prejudice under Rule 403. As relevant here, Rule 403 allows the exclusion of relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." We have said in a number of cases that Rule 403 is an "'extraordinary remedy which should be used sparingly[.]'" *United States v. McGregor*, 960 F.3d 1319, 1324 (11th Cir. 2020) (citing cases standing for the same proposition).

We acknowledge that Rule 404(b) evidence "of a crime, wrong, or other act is inherently prejudicial to the defendant because it risks a jury's convicting the defendant for the extrinsic offense or conduct rather than the charged one." *Nerey*, 877 F.3d at

974. Although the issue here is a close one, our review is deferential, and Mr. Blanc defended on the ground that he lacked knowledge. That tips the scales in this particular scenario. *See Kapordelis*, 569 F.3d at 1313–14 (holding that the probative value of evidence that the defendant had engaged in prior sexual acts with minors was not outweighed by the danger of unfair prejudice, considering the "[d]efendant's identity and knowledge defense[s]").

With respect to the requirements of Rule 403, the district court told the jury three times—when the evidence was admitted, at the close of the evidence, and during the government's closing argument—that the Rule 404(b) evidence could be considered only to decide whether Mr. Blanc had "the state of mind or knowledge necessary to commit the crimes charged in the indictment." *See, e.g.,* D.E. 117 at 184. The "'scalpel' of an appropriate limiting instruction at the time the evidence was admitted," we have said, "can reduce the risk of inherent prejudice[.]" *Ellisor*, 522 F.3d at 1268. And we think it did so here. *See United States v. Fortenberry*, 971 F.2d 717, 721 (11th Cir. 1992) ("The evidence had clear probative value; its prejudicial effect was minimized by the district court's limiting instruction."); *United States v. Wilchcombe*, 838 F.3d 1179, 1193 (11th Cir. 2016) ("[T]he district court's standard limiting instruction mitigated whatever prejudice may have resulted from the admission of [the Rule 404(b)] evidence.").

## B

Mr. Blanc contends that the district court erred under Rule 403 in allowing the government to play certain clips from the

videos at trial despite his stipulation that the videos contained child pornography and his concession that anyone seeing the images would know that they constituted child pornography. Reviewing again for abuse of discretion, *see United States v. Bradberry*, 466 F.3d 1249, 1253 (11th Cir. 2006), we reject the argument.

The "accepted rule that the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away rests on good sense. A syllogism is not a story, and a naked proposition in a courtroom may be no match for the robust evidence that would be used to prove it." *Old Chief v. United States*, 519 U.S. 172, 189 (1997) (holding that a district court abuses its discretion when it admits evidence of a defendant's legal status (e.g., being a felon) where the defense has offered to stipulate to that status). Here the district court permitted the government to play short clips of four of the videos found on Mr. Blanc's phone. Those clips lasted less than 30 seconds, and the district court found that the short duration of the clips mitigated the danger of unfair prejudice. *See* D.E. 55 at 6.

Mr. Blanc's Rule 403 argument is largely foreclosed by *United States v. Alfaro-Moncada*, 607 F.3d 720 (11th Cir. 2010). In that case, the defendant was charged with possessing two DVDs that contained child pornography. At trial the government introduced, over defense objection, five still images from the DVDs. On appeal, the defendant argued that the admission of the still images violated Rule 403, but we held that there was no error under *Old Chief*:

> Admission of the five still images from the DVDs served valid purposes. Those images proved that the DVDs actually contained child pornography, although it is true that Alfaro–Moncada stipulated to that fact. They also tended to show that Alfaro–Moncada knew he was in possession of child pornography, a fact that he did not stipulate. Even if showing the images to the jury created some risk of injecting emotions into the jury's decision-making, it was not an abuse of discretion for the district court to decide that the risk did not substantially outweigh the still images' probative value. That is especially true since the jury was only shown a small number of the images on the DVDs—only 5 out of 4,650.

*Id.* at 734 (citations omitted).

Here the video clips played by the government were collectively less than 30 seconds in duration. Each child pornography prosecution is of course different, but Mr. Blanc has not explained why his case is meaningfully different from *Alfaro-Moncada*. The district court did not abuse its discretion in allowing the government to play the short video clips.

## III

Mr. Blanc argues that the evidence was insufficient to convict him of transporting and possessing child pornography. The only element he challenges for both charges, however, is knowledge. *See United States v. Pruitt*, 638 F.3d 763, 766 (11th Cir.

2011) ("Inadvertent receipt of child pornography is not a violation of [18 U.S.C. § 2252A(a)(2)].").

"We review sufficiency challenges *de novo*, viewing the evidence, and all reasonable inferences therefrom, in the light most favorable to the jury's verdicts. The question is whether any rational jury could have found the essential elements of the crime beyond a reasonable doubt." *Mapson*, 96 F.4th at 1336 (citations and internal quotation marks omitted). Critically, the "evidence need not be inconsistent with every reasonable hypothesis except guilt, and the jury is free to choose between or among the reasonable conclusions to be drawn from the evidence presented at trial." *Id.* (citation and internal quotation marks omitted).

The child pornography videos were automatically downloaded to Mr. Blanc's phone by WhatsApp. Nevertheless, "knowledge can be inferred from circumstantial evidence," *Staples v. United States*, 511 U.S. 600, 615 n.11 (1994), and the evidence here permitted the jury to find that Mr. Blanc acted with the requisite knowledge. First, he was a member of several WhatsApp groups, one of which had a Haitian Creole title referencing rough sex with children. Second, he knew that some of the groups he belonged to exchanged pornographic videos, including "kids porn." Third, he admitted viewing two videos containing child pornography through these groups; he described one of the videos from memory and said he had seen another video involving a 10-year-old girl performing oral sex on an adult male. Fourth, he knew that he was storing the child pornography on his phone through WhatsApp

and he did not delete the videos after viewing them. Fifth, he had recently tried to entice a fictitious 14-year-old girl to have sex with him. *See Pruitt*, 638 F.3d at 767 (affirming conviction for knowing receipt of child pornography: "[T]he evidence showed that on 15 March 2007, without a job-related need to do so, Defendant used his work computer to seek out and to view child-pornography images on the County's server via remote access. Defendant admitted knowing that the files contained child-pornography images when he opened the files out of 'curiosity' and 'stupidity.' This evidence is sufficient for a reasonable jury to have concluded beyond a reasonable doubt that Defendant 'knowingly receive[d]' child-pornography images on his work computer.").

All of this evidence, taken together, distinguishes Mr. Blanc's case from *United States v. Dobbs*, 629 F.3d 1199, 1201 (10th Cir. 2011), where images of child pornography were automatically stored on the temporary internet folder, or cache, of the defendant's computer and there was no evidence that the defendant ever accessed them. *See id.* at 1204 ("A careful review of the record reveals that the government presented no evidence that Mr. Dobbs had accessed the files stored in his computer's cache, including the two images at issue. And, more tellingly, there was no evidence that he even knew about his computer's automatic-caching function. Moreover, as to the two images at issue, there was no evidence presented to the jury that Mr. Dobbs even saw them, much less had the ability to exercise control over them by, for example, clicking on them or enlarging them.").

## IV

For offenses involving the possession of child pornography, the Sentencing Guidelines call for an enhancement to the base offense level based on the number of "images" involved. *See* U.S.S.G. § 2G2.2(b)(7)(A)–(D). The commentary to § 2G2.2(b)(7) provides that "[e]ach video . . . shall be considered to have 75 images." *Id. at* cmt. n.6(B)(ii). Because the evidence at the sentencing hearing showed that Mr. Blanc possessed fourteen videos containing child pornography, the district court imposed a five-level enhancement under § 2G2.2(b)(7)(D) for more than 600 images. *See* D.E. 94 at 11–12.

Mr. Blanc challenges the district court's reliance on the commentary to § 2G2.2(b)(7), arguing that it violated the dictates of *Kisor v. Wilkie*, 588 U.S. 558 (2019), and *United States v. Dupree*, 57 F.4th 1269 (11th Cir. 2023) (en banc). In his view, the guideline is unambiguous and calls for each video to be treated as a single image. Because he did not object to the use of the commentary at the sentencing hearing, however, we review for plain error. *See United States v. Corbett*, 921 F.3d 1032, 1037 (11th Cir. 2019) ("We review unpreserved sentencing objections only for plain error.").[2]

---

[2] We have explained that "[l]itigants can waive or forfeit positions or issues through their litigation conduct in the district court but not authorities or arguments." *ECB USA, Inc. v. Chubb Ins. Co. of N.J.*, 113 F.4th 1312, 1320 (11th Cir. 2024) (citing cases). So, had Mr. Blanc challenged the commentary to § 2G2.2(b)(7) on some ground below, he could now assert a new argument on appeal to support that challenge. But he did not object to the commentary on any ground at sentencing.

An error is plain if it is "clear or obvious." *Rosales-Mireles v. United States*, 585 U.S. 129, 134 (2018). And it is "enough that an error be 'plain' at the time of appellate consideration." *Johnson v. United States*, 520 U.S. 461, 468 (1997). But where "the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it." *United States v. Hesser*, 800 F.3d 1310, 1325 (11th Cir. 2015) (citation and internal quotation marks omitted). We hold that the district court did not plainly err in relying on and applying the commentary.

In 2003, Congress amended the Sentencing Guidelines to include an image table that applies to child pornography offenses. *See* Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today (PROTECT) Act of 2003, Pub. L. No. 108-21, 117 Stat. 650. The image table provides a two-level enhancement for 10 to 149 images; a three-level enhancement for 150 to 299 images; a four-level enhancement for 300 to 599 images; and a five-level enhancement for 600 or more images. *See* U.S.S.G. § 2G2.2(b)(7)(A)–(D). Congress did not define the term "images" or instruct how media formats other than still photographs should be tallied under the table.

As a result, the Sentencing Commission sought public comment and conducted studies regarding these and other changes to the guidelines. After receiving a range of suggestions—such as that one video should equal one image and that each moving image should result in an enhancement of two or three levels—the

Commission "determined that because each video contained multiple images it should be counted as more than one image." United States Sentencing Commission, *History of the Child Pornography Guidelines* 41–44 (Oct. 2009).

Because of the disproportionate results that would occur by counting each video as a single image or by counting each frame of a video as a single image, the Commission selected a ratio of 75 images to one video to respect the penalty scale that Congress established. *See id.* The commentary it adopted instructs that each "photograph, picture, computer or computer-generated image, or any similar visual depiction" shall count as one image, and each "video, video-clip, movie, or similar visual depiction shall be considered to have 75 images" unless the recording is "substantially more than 5 minutes," which may warrant an upward departure. *See* U.S.S.G. § 2G2.2(b)(7), cmt. n.6(B)(i),(ii).

In *Kisor*, the Supreme Court held that a district court should defer to an agency's interpretation of a regulation "only if a regulation is genuinely ambiguous. . . . even after a court has resorted to all the standard tools of interpretation." 588 U.S. at 573. We held in *Dupree* that *Kisor* applies to the Sentencing Guidelines and that the commentary cannot deviate from an unambiguous guideline. *See* 57 F.4th at 1275, 1277.

The district court did not plainly err by relying on the commentary. First, the guideline at issue, § 2G2.2(b)(7), does not define the term "images"; nor does it specify how a video containing a sequence of images should be tallied under the image table.

Second, we have no published decisions resolving the issue Mr. Blanc now raises.[3]

The two appellate courts that have confronted the issue have come to different conclusions about whether § 2G2.2(b)(7) is ambiguous. A divided panel of the Sixth Circuit held that § 2G2.2(b)(7) is ambiguous and that, as a result, the commentary establishing the 75:1 ratio is entitled to deference. *See United States v. Phillips*, 54 F.4th 374, 380–86 (6th Cir. 2022). The third member of the panel, Judge Larsen, asserted that an "image," in the context of a video, means "frame." *See id.* at 390–92 (Larsen, J., concurring in the judgment). The Third Circuit, in a case decided after *Phillips*, agreed with Judge Larsen's view and held that "image" unambiguously means "frame," which results in no deference being given to the 75:1 ratio in the commentary. *See United States v. Haggerty*, 107 F.4th 175, 183–89 (3d Cir. 2024). Despite their disagreement about ambiguity, the Sixth and Third Circuits rejected the position advocated by Mr. Blanc on appeal—that each video must be treated as one image. *See Phillips*, 54 F.4th at 381–82 (majority opinion) & 392 (Larsen, J., concurring in the judgment); *Haggerty*, 107 F.4th at 183.

Given the uncertain legal landscape about the 75:1 ratio prescribed by the commentary to § 2G2.2(b)(7), Mr. Blanc cannot

---

[3] In two unpublished opinions we have concluded that district courts properly applied the commentary because § 2G2.2(b)(7) is ambiguous as to how to treat videos under the image table. *See United States v. Vandyke*, 2024 WL 505080, at *2–*4 (11th Cir. Feb. 9, 2024); *United States v. Peralta*, 2024 WL 4603297, at *2 (11th Cir. Oct. 29, 2024).

20                   Opinion of the Court                   22-14128

show that any error committed by the district court was plain. We therefore affirm his sentence.[4]

V

Mr. Blanc's convictions and sentence are affirmed.

**AFFIRMED.**

---

[4] Mr. Blanc's motion for a stay is denied.